UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| TREVOR KEEGAN, | CIV. NO. 22-00089 LEK-RT |
| Petitioner, | |
| vs. | |
| ESTELLA DERR, | |
| Respondent. | |

**ORDER GRANTING IN PART AND DENYING IN PART PETITIONER'S
PETITION UNDER 28 U.S.C. § 2241 FOR A WRIT OF HABEAS CORPUS**

Before the Court is pro se Petitioner Trevor Keegan's
("Petitioner" or "Keegan") Petition Under 28 U.S.C. § 2241 for a
Writ of Habeas Corpus, filed on March 7, 2022 ("Petition").
[Dkt. no. 1.] On April 11, 2022, Keegan filed his Supplemental
Information in Support of Petitioner's Writ of Habeas Corpus
Under 18 U.S.C. 2241 ("Supplement"). [Dkt. no. 11.] On
April 12, 2022, Respondent Estella Derr, Warden of the Federal
Detention Center in Honolulu, Hawai`i ("Respondent" or "Warden
Derr" and "FDC Honolulu"), filed her Response to Petition for
Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("Response").
[Dkt. no. 12.] On April 25, 2022, Keegan filed his Answer to
Response to Petition for Writ of Habeas Corpus Pursuant to 28
U.S.C. 2241 ("Reply"). [Dkt. no. 15.] The Court finds this
matter suitable for disposition without a hearing pursuant to
Rule LR7.1(c) of the Local Rules of Practice for the United

States District Court for the District of Hawaii ("Local Rules").  Keegan's Petition is hereby granted in part and denied in part for the reasons set forth below.

## BACKGROUND

On May 17, 2021, Keegan was sentenced to fifteen months imprisonment and two years of supervised release.  See United States v. Keegan, CR 20-00076 DKW ("CR 20-076"), Judgment in a Criminal Case, filed 5/18/21 (dkt. no. 42), at 1-3 ("Judgment").  At the time of the filing of the Petition, Keegan was incarcerated at FDC Honolulu.  [Petition at PageID.1.] Keegan was released from incarceration on July 19, 2022. Federal Bureau of Prisons, Find an inmate, https://www.bop.gov/inmateloc/ (last visited Mar. 6, 2023).

Keegan raises two grounds for which he seeks redress. First, Keegan states the administration at FDC Honolulu miscalculated his First Step Act ("FSA") credits because it applied 44 days of earned time credit, but it should have applied 127 days of earned time credit.  [Petition at PageID.4.] Keegan contends he should be credited with 127 days of earned time credit as of May 11, 2022 because he qualified for the initial 10 days for being a minimum risk status inmate, and he is entitled to an additional 5 days of time credit per 30-day period because he was engaged in productive activity – e.g., working.  See id. at PageID.4-5.  Keegan states that, although

2

the COVID-19 pandemic caused the Federal Bureau of Prisons ("BOP") to limit the evidence-based recidivism reduction programs offered, "interruptions in such programming [do] not effect [sic] an inmate's ability to earn Time Credits." [Id. at PageID.5.] Moreover, Keegan argues the cutoff date for the calculation his time credits, December 25, 2021, that BOP used contradicts the stated purpose of the FSA. See, e.g., Supplement at PageID.41-42.

Second, Keegan contends that the 127 days of credit "should be applied to Supervised Release rather than home confinement . . . ." [Petition at PageID.6.] Although unclear, it appears that Keegan states he would not be able to utilize the earned time credit if he were placed in home confinement after his release from FDC Honolulu and, therefore, he should be placed on supervised release to utilize his earned time credits. [Id.]

In his Petition, Keegan states he neither appealed to a higher agency or court nor exhausted administrative remedies. See id. at PageID.1, PageID.4, PageID.6. In his Reply, however, Keegan states that, on February 22, 2022, he submitted a BP-8 grievance form to challenge the miscalculation of his time credits. He submitted a BP-9 grievance form on March 1, 2022, and another on March 2, 2022. On March 7, 2022, Keegan received a receipt acknowledging that Warden Derr received his BP-9

3

grievance.  [Reply at PageID.169.]  On April 6, 2022, he
received a response to his BP-9 grievance that acknowledged
there had been an error and the BOP recalculated his credit time
to 58 days.  [Id.; Supplement at PageID.41.]  Attached to
Keegan's Supplement are two emails sent by Keegan on April 6,
2022 acknowledging receipt of the response to his BP-9 grievance
and requesting a BP-10 grievance form in order "to continue the
administrative remedy process."  [Supplement at PageID.44 (email
to "AW-PROGRAMS" addressed "To: Warden Derr"), PageID.45 (email
to "Unit Manager Liaison").]  Keegan states he submitted a BP-10
grievance form on April 14, 2022.  [Reply at PageID.169.]  The
status of the BP-10 grievance form is unknown.

        On November 22, 2022, the United States District Court
for the Western District of Washington accepted the transfer of
jurisdiction over Keegan's criminal case.  See CR 20-076,
Transfer of Jurisdiction, filed 11/23/22 (dkt. no. 49).

### STANDARD

        "Review of the execution of a sentence may
be had through petition for a writ of habeas
corpus under 28 U.S.C. § 2241."  United States v.
Giddings, 740 F.2d 770, 772 (9th Cir. 1984).
Section 2241 allows "the Supreme Court, any
justice thereof, the district courts and any
circuit judge" to grant writs of habeas corpus
"within their respective jurisdictions."  28
U.S.C. § 2241(a).  A district court must "award
the writ or issue an order directing the
respondent to show cause why the writ should not
be granted, unless it appears from the

application that the applicant or person detained is not entitled thereto." 28 U.S.C. § 2243.

Yanagihara v. Derr, Civil No. 22-00145 JAO-RT, 2023 WL 2163685, at *3 (D. Hawai`i Feb. 22, 2023). "In particular, a petitioner may challenge computation of a prisoner's sentence by prison officials via a section 2241 petition." Walsh v. Boncher, No. 22-cv-11197-DLC, 2023 WL 363591, at *2 (D. Mass. Jan. 23, 2023) (citation and internal quotation marks omitted).

## DISCUSSION

### I. Whether the Court Has Jurisdiction over the Petition

Because Keegan's circumstances have changed since he filed the Petition, the Court must first address whether it has jurisdiction to rule on the Petition. "[A] federal court may not entertain an action over which it has no jurisdiction." Hernandez v. Campbell, 204 F.3d 861, 865 (9th Cir. 2000) (per curiam) (some citations omitted) (citing Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 701, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)). "[A] habeas petition filed pursuant to § 2241 must be heard in the custodial court . . . ." Id. (citations omitted). Although Keegan's case was transferred to the Western District of Washington, see CR 20-076, Transfer of Jurisdiction, this Court may still rule on the Petition because it was filed in the District of Hawai`i prior to the transfer. See, e.g., Richitelli v. Shartle,

5

No. CV-15-00412-TUC-RM (BPV), 2017 WL 5900072, at *2 (D. Ariz. Nov. 6, 2017) ("[Jurisdiction] is sufficient if the custodian is in the territorial jurisdiction of the court at the time the petition is filed, and once jurisdiction has been properly established, transfer of the petitioner thereafter does not defeat personal jurisdiction." (citing Francis v. Rison, 894 F.2d 353, 354 (9th Cir. 1990); Rumsfeld v. Padilla, 542 U.S. 426, 441 (2004) ("when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."))).

## II.  **Mootness**

The Court addresses the issue of mootness because Keegan's circumstances have changed since he filed the Petition.

> Article III of the Constitution limits the jurisdiction of the federal courts to "actual, ongoing" "Cases" and "Controversies."  U.S. Const. art. III, § 2, cl. 1; Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477 (1990); see United States v. Strong, 489 F.3d 1055, 1059 (9th Cir. 2007).  "Failure to satisfy Article III's case-or-controversy requirement renders a habeas petition moot."  Kittel v. Thomas, 620 F.3d 949, 951 (9th Cir. 2010) (citation and internal quotation marks omitted).  Because "parties must continue to have a personal stake in the outcome of [a] lawsuit," Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citation and internal quotation marks omitted), generally, once a prisoner is released from custody, a habeas petition challenging the prisoner's confinement becomes moot unless there

> is "'some concrete and continuing injury other
> than the now-ended incarceration.'" Qassim v.
> Bush, 466 F.3d 1073, 1076 (D.C. Cir. 2006); see
> also Dilley v. Gunn, 64 F.3d 1365, 1368 (9th Cir.
> 1995) ("An inmate's release from prison while his
> claims are pending generally will moot any claims
> for injunctive relief relating to the prison's
> policies unless the suit has been certified as a
> class action." (citations omitted)).

Yanagihara, 2023 WL 2163685, at *3.

Keegan is no longer incarcerated at FDC Honolulu and he is currently serving his term of supervised release. See, e.g., Judgement at 2-3. However, "it is possible that, any time Petitioner served in custody beyond that which he should have due to a miscalculation of earned time credits could form **part** of the basis of any modification of his supervised release term." See Yanagihara, 2023 WL 2163685, at *3 (emphasis in Yanagihara) (some citations omitted) (citing 18 U.S.C. § 3583(e)). Accordingly, the Petition is not moot.

### III. Exhaustion of Administrative Remedies

"Federal prisoners are required to exhaust their federal administrative remedies prior to bringing a petition for a writ of habeas corpus in federal court." Martinez v. Roberts, 804 F.2d 570, 571 (9th Cir. 1986) (per curiam) (citations omitted). But, because § 2241 does not statutorily require exhaustion, federal courts "have discretion to waive the exhaustion requirement when it is prudentially required . . . ." Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004) (citations

omitted).  "[A] court may waive the prudential exhaustion
requirement if 'administrative remedies are inadequate or not
efficacious, pursuit of administrative remedies would be a
futile gesture, irreparable injury will result, or the
administrative proceedings would be void.'"  Hernandez v.
Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v.
Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

      Warden Derr outlines the BOP administrative grievance
process as follows:

>       BOP's Administrative Remedy Program has four
> levels.  See 28 C.F.R. § 542.10-.19.  First, an
> inmate must try to resolve the issue informally
> with Unit Team staff, using the BP-8 form.  Id.
> § 542.13(a).  If informal resolution is
> unsuccessful, the inmate may submit an
> administrative remedy request to the Warden using
> the BP-9 Form.  Id. §§ 542.13(a), 542.14.  If
> unsatisfied with the Warden's response, the
> inmate may appeal to the Regional Director using
> the BP-10 Form.  Id. § 542.15.  Finally, if
> unsatisfied with the Regional Director's
> response, the inmate may appeal to the General
> Counsel using the BP-11 Form.  Id.  An inmate
> properly exhausts available remedies by appealing
> through to the General Counsel.  See id.; see
> also Vega v. United States, 881 F.3d 1146, 1154
> (9th Cir. 2018).

[Response at 6.]

      Warden Derr argues Keegan failed to exhaust the
administrative remedies process and, therefore, the Petition
must be denied.  See id. at 3.  Keegan states he filed a BP-10
grievance form, see Reply at PageID.169, but that grievance form

was purportedly filed after the filing of the Petition. Although Keegan should have exhausted the administrative remedies process before filing the Petition, he is no longer an inmate and, thus, is unable to exhaust the administrative remedy process. See Hernandez, 872 F.3d at 988. As such, the Court waives the exhaustion requirement and will rule on the merits of the Petition.

## IV.   Merits of the Petition

### A.   Relevant FSA Framework

Under the FSA, eligible inmates are allowed to earn time credits "towards pre-release custody or early transfer to supervised release for successfully completing approved Evidence-Based Recidivism Reduction programs or Productive Activities." Nygren v. Boncher, 578 F. Supp. 3d 146, 149 (D. Mass. 2021) (citation omitted). In accordance with 18 U.S.C. § 3632(d)(4)(C), an eligible inmate "who successfully completes evidence-based recidivism reduction programs or productive activities shall earn time credits" of ten days "for every 30 days of successful participation." 18 U.S.C. § 3632(d)(4)(A)(i). Earned time credits by eligible inmates are "applied toward time in prerelease custody or supervised release." 18 U.S.C. 3632(d)(4)(C).

By accelerating the time to secure prerelease custody or supervised release with FSA credits, the FSA incentivizes inmates to participate in and complete beneficial "evidence-based recidivism reduction" programs ("EBRRs") or "productive activities" ("PAs"). Pollock v. Kallis, Civ. No. 20-0359, 2021 WL 3476627, at *4 (D. Minn. Apr. 6, 2021). In connection thereto, the Bureau of Prisons ("BOP") assigns a [Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN")] risk score which measures an inmate's "criminal risk factors . . . to predict

> the likelihood that a person in federal prison
> will re-offend upon release."  [United States v.]
> DeCaro, [No. 1:96-CR-00005-JAR-1,] 2022 WL
> 4395905, at *1 n.1 [(E.D. Mo. Aug. 23, 2022)];
> Goodman v. Ortiz, Civ. No. 20-7582 (RMB), 2020 WL
> 5015613, at *1 (D.N.J. Aug. 25, 2020) ("BOP
> created a risk and needs assessment system,"
> PATTERN, "in compliance with the First Step Act,
> 18 U.S.C. § 3632(a).").  The four PATTERN risk
> scores are minimum, low, medium, and high-risk.
> DeCaro, 2022 WL 4395905, at *1 n.1.  Inmates with
> a minimum or low PATTERN risk score earn 15 as
> opposed to ten "days of [FSA] time credits for
> every 30 days of successful participation in" an
> EBRR or PA.  Nygren, 578 F. Supp. 3d at 149
> (citing 18 U.S.C. § 3632(d)(4)).

Walsh, 2023 WL 363591, at *1 (some alterations in Walsh)

(footnote omitted); see also Cazares v. Hendrix, 575 F. Supp. 3d

1289, 1294-96 (D. Or. 2021) (outlining relevant provisions of

the FSA addressing earned time credit).

## B.   The Calculation of Keegan's Earned Time Credit

Keegan appears to argue he is entitled to 127 days of

earned time credit because he should be credited for working

hours interrupted by the COVID-19 pandemic.  See Petition at

PageID.5.  Keegan, however, does not state the number of hours

that were reduced and whether the BOP failed to incorporate

those reduced hours into its calculation.  The Court is unable

to determine whether the BOP miscalculated his earned time

credit insofar as Keegan asserts working hours, or hours he

would have worked but for the pandemic, were not incorporated

into the calculation.  Thus, to the extent that the Petition

relies on that argument, the Petition is denied.  See, e.g.,
Yanagihara, 2023 WL 2163685, at *5 (denying the petition, in
part, because the petitioner "provide[d] no basis for his
conclusory assertion that he is entitled to an additional 135
days of time credits").

Keegan also contends the BOP miscalculated his earned
time credits because it used an arbitrary cutoff date of
December 25, 2021.  See Supplement at PageID.42.  Warden Derr
submits evidence that the December 25, 2021 cutoff date was used
only until the BOP's automated calculation system was
implemented, and once implemented, Keegan's earned time credit
would be recalculated with the relevant time credits earned
after December 25, 2021.  See Response, Decl. of Susan Giddings
("Giddings Decl.") at ¶¶ 6.g-h.[1]  The system was expected to "go
live" at some point during mid-May to late May.  See id. at
¶ 6.i.  At the time the Response was filed, Keegan had a
projected statutory release date of September 15, 2022.  See
id., Exh. G (Sentence Monitoring Computation Data as of 04-04-
2022 ("Computation Data")) at 1.  The Computation Data shows
that Keegan had 58 days of earned time credit with a projected

---

[1] Gidding is "Chief of the Unit Management Section of
the Correctional Programs Branch ('CPB'), which is
organized under the Correctional Programs Division ('CPD')
in the BOP's Central Office located in Washington, D.C."
[Giddings Decl. at ¶ 1.]

release date of July 19, 2022.  See id.  But, the Computation
Data does not include any earned time credit from January,
February, and March 2022.  See Giddings Decl. at ¶ 6.g.  Indeed,
Keegan was released on July 19, 2022.  Thus, to the extent that
Keegan earned additional time credit after December 25, 2021, it
was not added during a recalculation.

It is uncertain when the BOP's automated system was
fully implemented.  However, according to a BOP program
statement dated November 18, 2022, the automated system was
already in effect at the time the program statement was
released.  See U.S. Dep't of Justice, Federal Bureau of Prisons,
Program Statement No. 5400.01, First Step Act of 2018 – Time
Credits: Procedures for Implementation of 18 U.S.C.
§ 3632(d)(4), at 10,
https://www.bop.gov/policy/progstat/5410_01.pdf (last visited
Mar. 6, 2023) ("The calculation of [FSA Time Credits] is fully
automated . . . .").  It remains unclear whether the system was
automated before Keegan was released from incarceration.
Regardless, to the extent that Keegan states he qualified for
additional earned time credits, those time credits were not
applied because Keegan's actual release date reflects the BOP's
projected release date as of April 4, 2022.  See Computation
Data at 1.

12

Importantly, Warden Derr does not refute Keegan's claim that he accumulated additional earned time credits between December 25, 2021 and March 2022 (the month that the Petition was filed).  Instead, Warden Derr generally contends that "BOP does not calculate time credits based on future projected days. Credit is earned as it accumulates. . . .  It is entirely possible Petitioner may not earn time credits in the future." [Response at 11.]  Other than discussing the BOP's general guidelines, Warden Derr fails to address Keegan's particular circumstances.  Because it is unclear if the time credits Keegan earned after December 25, 2021 were applied to his term of supervised release, the Court grants the Petition insofar as Warden Derr is directed to recalculate Keegan's earned time credits and to file a declaration regarding the results of the recalculation.  If Keegan has additional earned time credits, an order will be entered applying those additional credits to Keegan's term of supervised release.[2]  See, e.g., Stewart v. Snider, Case No.: 1:22-cv-00294-MHH-JHE, 2022 WL 2032305, at *7 (N.D. Ala. May 10, 2022) ("Respondent does not expressly dispute that Stewart has earned additional [Earned Time Credits] between BOP's last calculation on December 25, 2021, and April 28, 2022,

---

[2] It is possible that Keegan's earned time credits were adjusted after he was released, and such an adjustment may have already been applied to Keegan's term of supervised release.

13

which could result in an earlier release date.  If Stewart has
indeed earned additional credits during his time, then they
should be awarded to him and reflected in his sentence.
Additionally, because of the uncertainty of the automated
system's implementation and Stewart's approaching release date,
it is necessary for BOP to reevaluate the application of
Stewart's credits . . . ." (citation omitted)), *report and
recommendation adopted*, 2022 WL 2019965 (June 6, 2022).

Finally, to the extent that Keegan requests to be
placed on supervised release as opposed to home confinement,
that request is denied as moot because Keegan was originally
sentenced to a term of supervised release after serving his term
of imprisonment.  See Judgment at 2–3.

## CONCLUSION

On the basis of the foregoing, Keegan's
Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus,
filed March 7, 2022, is HEREBY GRANTED IN PART AND DENIED IN
PART.  The Petition is GRANTED to the extent that Warden Derr is
DIRECTED to recalculate Keegan's earned time credits and, if
Keegan has additional earned time credits, a declaration must be
submitted that provides the amount of additional earned time
credits Keegan should be awarded.  If Keegan does not have
additional time credits or the additional time credits have
already been applied to Keegan's term of supervised release,

14

then the submitted declaration must indicate as such.  Warden

Derr must submit the declaration by **April 7, 2023.**  If Keegan

has additional earned time credits, an order will be entered

applying those additional credits to Keegan's term of supervised

release.  The Petition is DENIED in all other respects.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, March 8, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

TREVOR KEEGAN VS. ESTELLA DERR; CV 22-00089 LEK-RT; ORDER
GRANTING IN PART AND DENYING IN PART PETITIONER'S PETITION UNDER
28 U.S.C. § 2241 FOR A WRIT OF HABEAS CORPUS